1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 01, 2024

SEAN F. McAVOY, CLERK

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

13

| | |
|---|---|
| ANDREW ERICKSON, a married man, and CRAIG BELFIELD, a married man, | No. 1:23-CV-03118-MKD |
| Plaintiffs, | ORDER GRANTING DEFENDANT ARXADA, LLC'S MOTION TO DISMISS and |
| v. | DENYING IN PART AND GRANTING IN PART DEFENDANT ENVIRO TECH'S MOTION TO |
| ENVIRO TECH CHEMICAL SERVICES, INC., a California Corporation, d/b/a OrganiClean, and ARXADA, LLC a Delaware Limited Liability Company, | DISMISS |
| | **ECF Nos. 5, 6, 9** |
| Defendants. | |

14

15

16

17

18

19

20

Before the Court is Defendant Arxada, LLC's Motion to Dismiss, ECF No.

5, Defendant Enviro Tech Chemical Services, Inc.'s (Enviro Tech) Motion to

Dismiss, ECF No. 6, and "corrected" Motion to Dismiss, ECF No. 9.  These

matters were submitted for consideration without oral argument.  The Court has

considered the briefing and the record and is fully informed.  For the below

reasons, the Court grants Defendant Arxada, LLC's Motion to Dismiss, ECF No. 5,

ORDER - 1

and grants in part and denies in part Defendant Enviro Tech's Motion to Dismiss, ECF Nos. 6, 9.

## BACKGROUND

**A. Procedural History**

On July 7, 2023, Plaintiffs Andrew Erickson and Craig Belfield filed a Complaint against Defendants Enviro Tech and Arxada, LLC, in Yakima County Superior Court.  ECF No. 1-1.  In August 2023, Defendants removed the action, based on diversity jurisdiction.  ECF No. 1 at 3.  Plaintiffs subsequently filed an Amended Complaint ("Complaint"), which alleges nine claims: breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, unjust enrichment, demand for partnership accounting, conversion, a Lanham Act violation, trademark infringement, and violation of Washington's Consumer Protection Act ("CPA").  ECF No. 4.

On August 30, 2023, each Defendant filed a Motion to Dismiss.  ECF Nos. 5, 6, 9.  Defendant Arxada, LLC's motion alleges that the Court lacks personal jurisdiction over the claims against it, under Fed. R. Civ. P. 12(b)(2).  ECF No. 5.  Defendant Enviro Tech's motion seeks dismissal of five of Plaintiffs' claims for failure to state a claim upon which relief can be based, under Fed. R. Civ. P. 12(b)(6).  ECF No. 9.

ORDER - 2

**B. Summary of Allegations**

The following factual allegations are derived from the Complaint. Plaintiff Erickson is a resident of Idaho, and Plaintiff Belfield is a resident of Washington; and both Plaintiffs do business in Washington. ECF No. 4 at 2. Defendant Enviro Tech is a corporation that is incorporated and has its principal place of business in California. *Id.* Defendant Arxada, LLC is a Delaware limited liability company. *Id.* at 3.

In approximately October 2019, Plaintiffs and a third person, Tom Iverson, began the commercial production and sale of "OrganiClean,"[1] a cleaning product made using Defendant Enviro Tech's "Perispray" product. *Id.* at 4-5. Mr. Iverson left this enterprise shortly after. *Id.* at 5. On March 21, 2019, Plaintiff Erickson applied to the U.S. Patent and Trademark Office to register "OrganiClean" as a trademark. *Id.* at 6.

In early 2020, Plaintiffs approached Michael Harvey, then-CEO of Enviro Tech, to discuss the possibility of collaborating on the production and distribution of OrganiClean. *Id.* at 5. Ultimately, Plaintiffs and Mr. Harvey, acting on behalf

---

[1] Plaintiffs refer to this product as "OrganiClean," ECF No. 1-1, and "Organiclean," ECF No. 4, while Defendants use "OrganiClean," ECF No. 9. The Court uses OrganiClean herein for consistency.

ORDER - 3

of Enviro Tech, entered into a partnership agreement (hereinafter, "the Agreement"). *Id.* Under the terms of the Agreement, Plaintiffs allowed Enviro Tech to use the then-unregistered[2] "OrganiClean" trademark, including use of OrganiClean as a fictitious name for Enviro Tech, as an initial capital contribution. *Id.* at 6. Enviro Tech agreed to produce, package, and ship OrganiClean products, with the associated expenses to be paid from the sale proceeds. *Id.* at 7. Enviro Tech's Chief Financial Officer would oversee the partnership's billing and collections, which were handled through a separate bank account designated for OrganiClean sales. *Id.* at 6. Plaintiffs were to handle marketing and sales, using the contacts and relationships they had developed from their previous OrganiClean enterprise. *Id.* at 7. Plaintiffs and Enviro Tech would each claim a one-third share in the partnership's net profits. *Id.*

Plaintiff Erickson made a further capital contribution by tendering Plaintiffs' existing inventory of product packaging to Enviro Tech, at a total cost of approximately $50,000 in asset value and shipping costs. *Id.* Plaintiffs state that Enviro Tech was obligated under the Agreement to make a matching capital contribution of $50,000, although Plaintiffs do not know whether this occurred. *Id.*

---

[2] Plaintiff Erickson's application for a registered trademark was granted on October 6, 2020. ECF No. 4 at 6.

ORDER - 4

In approximately November 2020, the partnership developed a new product, "OrganiClean OC3," and Plaintiff Erickson and Enviro Tech made further cash contributions to the partnership to pay for packaging. *Id.* at 8. The partnership also began selling "Bac Stop," a hand sanitizer product, during the COVID-19 pandemic. *Id.*

Enviro Tech was purchased by Arxada, LLC on December 22, 2021. *Id.* at 4. Plaintiffs allege that, at the time of this sale, the OrganiClean bank account held by Enviro Tech's CFO had a balance of $180,000 or more. *Id.* at 8. Plaintiffs believed that Arxada, LLC assumed Enviro Tech's duties under the Agreement through this purchase. *Id.* Further, Plaintiffs allege that the OrganiClean bank account remains under Arxada, LLC's control, yet Arxada, LLC has refused Plaintiffs' demands to provide an accounting, repayment of Plaintiff Erickson's cash contributions, or partnership distributions. *Id.* Plaintiffs state that Arxada, LLC has responded to Plaintiffs' demands by denying the existence of any OrganiClean profits. *Id.* at 9. Plaintiffs allege that Defendants have nevertheless continued to use the OrganiClean trademark without Plaintiffs' permission or agreement. *Id.*

### ARXADA, LLC'S MOTION TO DISMISS

Defendant Arxada, LLC contends the Court does not have personal jurisdiction over it. ECF No. 5.

ORDER - 5

**A. Legal Standard**

When a defendant moves for dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), it is the plaintiff who "bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted).  When the defendant's motion to dismiss relies only on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id*. (quotation and citation omitted).  The court must determine whether a plaintiff's "pleadings and affidavits establish" the requisite showing. *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1286 (9th Cir. 1977).  "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs.*, *Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (quoting *Schwarzenegger,* 374 F.3d at 800).  If any conflict exists between the parties' evidence, the court must resolve it in the plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

A federal district court sitting in diversity may exercise personal jurisdiction "to the extent the forum state's laws constitutionally provide." *Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990).  Washington's long-arm statute authorizes courts to exercise jurisdiction over nonresident defendants to the "full extent" of the Due Process Clause. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th

Cir. 2004) (citing *Shute v. Carnival Cruise Lines, Inc.*, 783 P.2d 78, 79-80 (Wash. 1989)); *see also Corker v. Costco Wholesale Corp.*, 585 F. Supp. 3d 1284, 1290 (W.D. Wash. 2022).  Accordingly, the Court need only determine whether exercising personal jurisdiction in this case comports with due process.  *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023).  Due process requires that the defendant have "certain minimum contacts" with a forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

The Supreme Court has recognized two kinds of personal jurisdiction: general and specific.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn.8 & 9 (1984)).  Arxada, LLC argues that the Court lacks a proper basis to exercise either general or specific jurisdiction.  Plaintiffs assert only that the evidence demonstrates "a prima facie case of *general* jurisdiction," without contesting Arxada, LLC's denial of specific jurisdiction.  ECF No. 11 at 2 (emphasis added).  Thus, Plaintiff has waived any argument that the Court has specific jurisdiction.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (plaintiff waived argument by failing to raise it in opposition to a motion to dismiss).

**B. Defendant Arxada, LLC**

The Court first addresses the matter of Arxada, LLC's identity.  Plaintiffs acknowledge that there are three similarly named but separate entities: Arxada, LLC; Arxada Holdings, NA, Inc.; and Arxada Americas, LLC.  ECF No. 11 at 9. Plaintiffs have submitted supporting materials that suggest there is a fourth entity, Arxada AG, which is based in Switzerland, although the parties do not acknowledge this entity in the briefing.  ECF No. 12-4 at 2; ECF No. 12-5 at 2.  Of these four entities, only Arxada, LLC is named as a defendant in the Complaint.

Arxada, LLC filed a Fed. R. Civ. P. 7.1 Disclosure on the same day that Defendants removed this matter.  ECF Nos. 1, 2.  This Disclosure explains the relationship as of August 2023 between the three "Arxada" companies Plaintiffs have acknowledged: Arxada Holdings NA, Inc., is the sole member of Arxada Americas, LLC, which in turn is the sole member of Arxada, LLC.[3]  ECF No. 2 at

---

[3] In their Response, Plaintiffs claim they do not currently know "the specific corporate structure, interrelation, and hierarchy" of these three entities due to the entities' private ownership, and that "Arxada[, LLC]'s Motion does nothing to expound upon the relationship between these three entities."  ECF No. 11 at 3. Plaintiffs do not address or dispute the relationship stated in Arxada, LLC's Rule 7.1 Disclosure.

ORDER - 8

2.

The Complaint and Plaintiffs' Response to the instant motion indicate that Plaintiffs intended to join the "Arxada" entity that purchased Enviro Tech and would therefore have control over Enviro Tech's OrganiClean checking account:

> Upon information and belief, the OrganiClean bank account had a balance of at least $180,000 as of December 2021 and immediately prior to *Arxada, LLC's acquisition of Enviro Tech*. . . . All of the income from the sales of OrganiClean products are currently under *the control and custody of Arxada, LLC*.

ECF No. 4 at 8 (emphases added).

> *Arxada clearly purchased Enviro Tech*. . . . Arxada's ultimate level of control of the [OrganiClean] bank account at issue is, and should be the subject of discovery. Arxada should not be summarily dismissed when *it likely holds the entire key to the return of Plaintiffs' funds*. . . . If it is later learned that Enviro Tech does not have access to this account or the funds in it, or that *Arxada has wrongfully withheld, retained, or expended such funds*, and Arxada has been dismissed, further relief cannot be awarded.

ECF No. 11 at 10 (emphases added).

However, Plaintiffs have submitted a copy of the Enviro Tech purchase agreement that clearly identifies the purchaser of Enviro Tech—including Enviro Tech's OrganiClean checking account—as Arxada Holdings NA, Inc. ECF No. 13-1 at 4, 10. The agreement notes Herens Topco S.àr.l., a Luxembourg company, is the parent company of Arxada Holdings NA Inc. *Id.* at 4. Plaintiffs also

ORDER - 9

submitted an article that discusses Arxada AG, the Switzerland-based company,

acquiring Enviro Tech.  ECF 12-5 at 2.  In short, it appears that Plaintiffs named

the wrong "Arxada" defendant in their Complaint.

Plaintiffs acknowledge this issue without resolving it.  In a footnote,

Plaintiffs state: "Arxada, LLC appears to be one of three entities that make up the

company Arxada, as it is colloquially referred.  Plaintiffs['] use of the term

'Arxada' herein, refers to Arxada as a whole."  ECF No. 11 at 3 n.1.  Plaintiffs

then argue that the Court may properly exercise personal jurisdiction based on

"Arxada's significant footprint in Washington State."  *Id.* at 6-7.  However, the

Court cannot treat Arxada, LLC and the other Arxada entities "as a whole" for

personal jurisdiction purposes.  The instant question is whether the Court's

exercise of general jurisdiction over Arxada, LLC, the named defendant—not

other, nonparty entities—would be consistent with due process.

**C. General Jurisdiction**

"Two authorities govern a federal court's exercise of personal jurisdiction

over a defendant: the Fourteenth Amendment's Due Process Clause and the long

arm statute of the state in which the district court sits."  *Briskin v. Shopify, Inc.*, 87

F.4th 404, 411 (9th Cir. 2023).  The Ninth Circuit has interpreted Washington's

long-arm statute, RCW 4.28.185, to "permit[] the exercise of jurisdiction to the full

extent of the due process clause."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th

Cir. 2004) (citation omitted); *see also Failla v. FixtureOne Corp.*, 336 P.3d 1112, 1116 (Wash. 2014) (en banc) (noting that Washington's long-arm statute is "designed to be coextensive with federal due process").

"A court may exercise general jurisdiction 'only when a defendant is essentially at home in the state.'" *Impossible Foods, Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). The inquiry is whether a foreign "corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014) (citation, quotation marks, and alteration omitted). "The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Id.* at 118 (citing *Goodyear Dunlop Tires*, 564 U.S. at 924). However, "in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that state.'" *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Daimler*, 571 U.S. at 139 n.19). This is a high standard—for example, in *BNSF Ry. Co.*, the Supreme Court held there was no general jurisdiction even though the defendant had more than 2,000 miles of railroad track and employed more than 2,000 employees in the forum state. *Id.* at 414. The standard is so particular because it opens the defendant to suit on causes

1  of action that are unrelated to their activities in the forum state.  *King v. Am.*

2  *Family Mut. Ins. Co.,* 632 F.3d 570, 579 (9th Cir. 2011).

3      There is no basis for the Court to find general jurisdiction exists.  The

4  Complaint states that Arxada, LLC is organized under the laws of Delaware and

5  does not specify a principal place of business.  ECF No. 4 at 3.  Plaintiffs do not

6  dispute Arxada, LLC's representation that its principal place of business is in New

7  Jersey.  ECF No. 1 at 4; ECF No. 2 at 2; ECF No. 15 at 4.

8      Nor have Plaintiffs established that this is an "exceptional case" for

9  extending general jurisdiction beyond the paradigmatic bases.  Besides contending

10  that Arxada, LLC purchased, supervises, and manages Enviro Tech (an allegation

11  that is contradicted by Plaintiffs' own supporting materials, ECF No. 13-1), the

12  Complaint offers no further explanation as to how Arxada, LLC has any

13  continuous and systematic affiliation with Washington, let alone an affiliation that

14  constitutes an "exceptional case" to extend general jurisdiction outside the

15  paradigm forums.  ECF No. 4 at 4; *see BNSF Ry.*, 581 U.S. at 413.  In response,

16  Plaintiffs offer further arguments regarding Arxada, LLC's contacts with

17  Washington.[4]  But the evidence before the Court ultimately shows little, if any,

18

19  [4] Arxada, LLC argues that the Court should not consider Plaintiffs' evidence

20  because it is hearsay.  ECF No. 15 at 7-8 (citing *David Peyser Sportswear, Inc. v.*

ORDER - 12

presence of Arxada, LLC in Washington, overall *and* in relation to some of the

other Arxada entities.

First, Plaintiffs contend that Arxada, LLC "maintains a manufacturing plant

in Kalama, Washington," and may employ Washington residents at that plant.

ECF No. 11 at 5; ECF No. 12-6 at 2; ECF No. 12-7 at 2. The evidence Plaintiff

cites to support this contention is Arxada.com, a website that appears to be

operated by Arxada AG. *See* ECF No. 12-4 at 3 (directing media inquiries to the

_____

*Spectrum Brands, Inc*., No. C09-169, 2010 WL 11583178, at *3 (W.D. Wash. Jan.

27, 2010)). The instant case is distinguishable. In *David Peyer Sportswear,* the

court declined to rely on a declaration from counsel, in which counsel stated he had

relied on a third-party website that showed there was frequent shipping through

Seattle. *Id.* The court noted there were "many layers of hearsay," that counsel did

not provide the website data to the court, and that the data was unauthenticated. *Id.*

Here, counsel has provided a signed declaration, the website URLs, and

screenshots of the websites' information. ECF Nos. 12, 13. Moreover, hearsay

may be considered for personal jurisdiction purposes if it has "circumstantial

indicia of reliability." *TVB Holdings (USA), Inc. v. Chau*, No. CV1301492, 2014

WL 12580009, at *5 (C.D. Cal. Jan. 27, 2014) (citation omitted). The details

Plaintiffs have provided are circumstantial indicia of reliability.

ORDER - 13

head of communications for Arxada AG); ECF No. 12-6 (reflecting a "headquarters" in Switzerland).

Second, Plaintiff contends Arxada, LLC is listed on the Kalama Chamber of Commerce's "Business Directory" at an address in Kalama. ECF No. 12-7 at 2. This business directory also lists the website for Arxada AG. *Id.*

Third, Plaintiffs note Arxada, LLC is registered with the Washington Department of Revenue under a physical location—an apartment in Seattle—with a mailing address in New Jersey. ECF No. 12-8 at 2-3.

Fourth, Plaintiffs cite to a record from the online records portal for King County Superior Court reflecting that a tax judgment was entered against an unspecified Arxada entity, in favor of the Washington State Department of Labor & Industries, on May 4, 2023. ECF No. 12-9 at 2-3.

Fifth, Plaintiffs provide several materials suggesting that the Arxada entities employ Washington residents. They note that the Arxada AG website states its Chief Sustainability and Communications Leader is located in Washington. ECF No. 12-10. Similarly, Plaintiffs attach a LinkedIn profile for an employee of an unspecified Arxada entity who appears to reside in Bellevue, Washington. ECF No. 12-10. Plaintiffs also submit a job posting on the Arxada AG website for a job in Kalama, Washington. ECF No. 12-11.

Last, Plaintiffs cite to the purchase agreement and the stock purchase

agreement, both of which indicate that the relevant entity was Arxada Holdings

NA Inc., not Arxada, LLC.  ECF No. 13-1.

The only cited evidence that explicitly lists Arxada, LLC is the Washington

Department of Revenue registration, which lists a Seattle address.  ECF No. 12-8

at 2-3.  The rest of the information Plaintiffs cite is either nonspecific as to which

Arxada entity it pertains to, or strongly indicates that it pertains to Arxada AG.

The fact that there is a relationship between Arxada, LLC and the other Arxada

entities "is insufficient, on its own, to justify imputing" the other Arxada entities'

contacts with Washington to Arxada, LLC, "for the purpose of establishing

personal jurisdiction."  *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir.

2015).  But even if Plaintiffs had shown that all the above contacts were

attributable to Arxada, LLC, it would not amount to an "exceptional case" to

extend general jurisdiction beyond its paradigmatic bases.  *See BNSF Ry. Co.*, 581

U.S. at 413.

In short, the record reflects that general jurisdiction over Arxada, LLC

would be proper in Delaware or New Jersey and possibly other jurisdictions, but

not Washington.  Plaintiffs have failed to demonstrate a prima facie case of general

jurisdiction.

**D. Jurisdictional Discovery**

Plaintiffs ask this Court to permit jurisdictional discovery to enable Plaintiffs to provide "further evidence that Arxada is doing business in Washington."  ECF No. 10 at 10.

"Jurisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'"  *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022) (quoting *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)) (other citation and internal quotation marks omitted).  Jurisdictional discovery should not be granted, however, on a plaintiff's "hunch that [such discovery] might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008), or "bare allegations in the face of specific denials," *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citation omitted).

Here, Plaintiffs have presented nothing beyond a mere hunch that discovery might yield jurisdictionally relevant facts.  The materials Plaintiffs have submitted to date only further demonstrate that this Court cannot exercise general jurisdiction over Arxada, LLC.  The Court is unpersuaded that jurisdictional discovery would yield facts sufficient to make this an exceptional case to extend general jurisdiction

ORDER - 16

over Arxada, LLC.  As such, Plaintiffs' request for jurisdictional discovery is denied.

## ENVIRO TECH'S MOTION TO DISMISS

Defendant Enviro Tech moves to dismiss the following claims: breach of the implied covenant of good faith and fair dealing, conversion, violation of the Lanham Act, trademark infringement, violation of the Washington CPA, and all claims relating to OrganiClean OC3 and Bac Stop.[5]  ECF No. 9 at 2.

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  In considering a motion to dismiss for failure to state a claim, the

_____

[5] The only claim that expressly refers to OrganiClean OC3 and Bac Stop, rather than to "OrganiClean" or "the OrganiClean product(s)," is the conversion claim. ECF No. 4 at 16.  However, Enviro Tech specifically contends that Plaintiffs have failed to plead sufficient facts to show that OrganiClean OC3 and Bac Stop were covered by any alleged agreement between Plaintiffs and Enviro Tech.  ECF No. 9 at 13.

ORDER - 17

Court must accept as true the well-pleaded factual allegations and any reasonable inference to be drawn from them, but legal conclusions are not entitled to the same assumption of truth. *Id.* A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 562 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citation omitted).

**B. Good Faith and Fair Dealing**

The Complaint alleges that Defendant Enviro Tech breached the covenant of good faith and fair dealing by (1) failing to pay Plaintiffs one-third of the net sale proceeds owed to them; (2) failing to repay Plaintiff Erickson's capital contribution; (3) refusing to provide an accounting of the partnership assets; and (4) injuring Plaintiffs' right to receive the benefits of the Agreement. ECF No. 4 at 12-13.

Defendant Enviro Tech contends that Plaintiffs have failed to plead the specific term or obligation of the alleged partnership agreement to which the implied covenant of good faith and fair dealing was attached. ECF No. 9 at 6-7.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  Restatement (Second) of Contracts § 205 (Am. Law. Inst. 1981).  This duty "arises when one party has discretionary authority to determine a future contract term."  *Rekhter v. State, Dep't of Social and Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014).  The duty prevents contracting parties from engaging in conduct that frustrates the other party's right to the benefits of the contract.  *Woodworkers of Am. v. DAW Forest Prods. Co*., 833 F.2d 789, 795 (9th Cir. 1987).  Although the duty of good faith and fair dealing is present in every contract, the covenant "creates obligations only in relation to the agreed terms of the contract."  *Rekhter*, 323 P.3d at 1041.  Examples of potential violations of the duty of good faith and fair dealing include: 1) evading the spirit of the bargain; 2) willfully rendering imperfect performance; 3) interference with or failing to cooperate in the other party's performance; abusing discretion granted under the contract; or 5) performing the contract without diligence.  *Microsoft Corp. v. Motorola, Inc.*, 963 F. Supp. 2d 1176, 1184 (W.D. Wash. 2013).

Enviro Tech correctly argues that the implied covenant of good faith and fair dealing does not impose a general, "free-floating obligation of good faith" upon it.  *See id*.  Rather, the obligation must arise out of a specific term of the Agreement that gave Enviro Tech discretion over a future term.  *See id.* at 1041-42.  Plaintiffs have not alleged in the Complaint that any term of the Agreement gave Enviro

1   Tech the discretionary authority to determine a future contract term and does not

2   specify which terms were allegedly performed in bad faith.  Plaintiffs allege only

3   that the partnership agreement was breached as whole, thereby injuring Plaintiffs.

4   Plaintiffs have failed to articulate how any of the four alleged acts they complain

5   about constituted a use of that discretion to frustrate their right to the benefits of

6   the Agreement.  *See Rekhter*, 323 P.3d at 1041; *Woodworkers of Am.*, 833 F.2d at

7   795.

8       Accordingly, the Court dismisses the claim for breach of the implied

9   covenant of good faith and fair dealing.  The Court finds that allowing amendment

10  would be futile and the claim is dismissed with prejudice.

11  **C. Conversion**

12      The Complaint alleges Plaintiffs had an interest in the money held in the

13  bank account established for the sales proceeds of OrganiClean, OrganiClean OC3,

14  and Bac Stop, and that Defendants willfully and intentionally interfered with that

15  right, thereby committing conversion.  ECF No. 4 at 16.

16      Defendant Enviro Tech contends Plaintiffs have failed to set forth facts

17  plausibly establishing a conversation claim.  Specifically, Enviro Tech argues

18  Plaintiffs have failed to allege that Enviro Tech wrongfully received any sales

19  proceeds funds, had an obligation to return specific money to Plaintiffs, or took

20  funds that Plaintiffs had specially deposited into the account.  ECF No. 9 at 8.

ORDER - 20

1    "A conversion is the act of willfully interfering with any chattel, without

2    lawful justification, whereby any person entitled thereto is deprived of the

3    possession of it." *Reliance Ins. Co. v. U.S. Bank of Wash., N.A.*, 143 F.3d 502, 506

4    (9th Cir. 1998) (citation and quotation marks omitted).  Traditionally, conversion

5    involves a party wrongfully taking and carrying away something tangible.  *Id.*

6    Thus, "bank accounts generally cannot be the subject of conversion, because they

7    are not specific money, but only an acknowledgment by the bank of a debt to its

8    depositor."  *Id.* (citation omitted); *see also Peters v. Sjoholm*, 631 P.2d 937, 940

9    (Wash. 1981) ("Once money is deposited in general bank account, title to the

10   money passes to the bank, and the bank and the depositor assume the relationship

11   of debtor and creditor, respectively.  . . . [T]he depositor exerts neither an

12   ownership nor a possessory interest in the funds . . . .").  Moreover, "there can be

13   no conversion of money unless it was wrongfully received by the party charged

14   with conversion, or unless such party was under obligation to return the specific

15   money to the party claiming it." *Pub. Util. Dist. No. 1 of Lewis Cnty. v. Wash.*

16   *Pub. Power Supply Sys.*, 705 P.2d 1195, 1211 (Wash. 1985), *modified*, 713 P.2d

17   1109 (Wash. 1986).

18       Plaintiffs allege that they and Enviro Tech, as partners, agreed that the sales

19   proceeds from OrganiClean would be deposited into the OrganiClean bank

20   account, and that one-third of these sales proceeds would be credited to each

ORDER - 21

1  partner.  ECF No. 4 at 7.  Plaintiffs do not contend that Enviro Tech wrongfully

2  received the money; rather, the Complaint seems to allege that the sales proceeds

3  were deposited into the OrganiClean bank account in the manner required by the

4  Agreement.  Plaintiffs also do not contend that Enviro Tech held any specific

5  money that it was obligated to return to them.  Plaintiffs have therefore failed to

6  allege sufficient facts to state a plausible conversion claim against Enviro Tech.

7  *See Wash. Pub. Power Supply Sys*., 705 P.2d at 1211.

8       The Court grants Defendant Enviro Tech's motion to dismiss the conversion

9  claim.  The Court finds that allowing amendment would be futile and the claim is

10  dismissed with prejudice.

11  **D. Statutory and Common Law Trademark Infringement Claims**

12       The Complaint alleges claims under the Lanham Act, common law

13  trademark infringement, and the Washington CPA, all three of which are based on

14  Defendants' alleged misappropriation of Plaintiffs' OrganiClean trademark.  ECF

15  No. 4 at 16-19.

16       Defendant Enviro Tech contends Plaintiffs have failed to state a trademark

17  infringement claim because Plaintiffs granted Defendant a naked license.  ECF No.

18  9 at 9-14.  Defendant Enviro Tech thus contends Plaintiffs have failed to state

19  claims as to violations of the Lanham Act and Washington state's Consumer

20  Protection Act, and trademark infringement.  *Id.*

ORDER - 22

The court analyzes these claims together, as courts have uniformly held that common law and statutory trademark infringement are both aspects of unfair competition. *See, e.g., New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1201 (9th Cir. 1979). Claims of unfair competition under state common law are "substantially congruent" to claims under the Lanham Act. *Cleary v. News Corp.,* 30 F.3d 1255, 1262-63 (9th Cir. 1994) (citing *Academy of Motion Picture Arts & Scis. v. Creative House Promotions, Inc*., 944 F.2d 1446, 1457 (9th Cir. 1991)).

To prove a claim of trademark infringement, a plaintiff must demonstrate (1) the plaintiff has a valid, protectable trademark, and (2) the defendant's use of the trademark is likely to cause confusion. *Applied Info. Scis. Corp. v. eBay, Inc.,* 511 F.3d 966, 969 (9th Cir. 2007); *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc*., 408 F.3d 596, 602 (9th Cir. 2005). Plaintiffs allege they are the registered owners of the OrganiClean trademark; that they granted Enviro Tech a license to use the then-unregistered OrganiClean trademark "as a fictitious business name of Enviro Tech in Stanislaus County, California," but did not permit, authorize, or otherwise agree to allow Defendants to use the mark in relation to product sales within Washington and nationwide. ECF No. 4 at 6, 16-19.

Defendant Enviro Tech contends Plaintiffs failed to control the quality of

their trademarks, thus granting Defendant a naked license.  ECF No. 9 at 9.  A

defendant may respond to a trademark infringement claim by raising a "naked

licensing" defense.  *Planet Drum Found. v. Hart*, No. 17-CV-2676, 2017 WL

4236932, at *8 (N.D. Cal. Sept. 24, 2017).  "Naked licensing occurs when the

licensor 'fails to exercise adequate quality control over the licensee[,]'" such that

the licensor is considered to have abandoned its rights to the trademark and is

estopped from asserting those rights.  *FreecycleSunnyvale v. Freecycle Network*,

626 F.3d 509, 516-17 (9th Cir. 2010).  This abandonment is involuntary, thus no

showing of subjective intent to abandon is required.  *Barcamerica Int'l USA Tr. v.

Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002).  However, the party

raising a naked license defense must meet a "stringent standard of proof."  *Id.*;

*Edwin K. Williams & Co. v. Edwin K. Williams & Co. E.,* 542 F.2d 1053, 1059

(9th. Cir. 1976).

Enviro Tech does not contend that Plaintiffs have failed to state a prima

facie claim for trademark infringement, except to the extent that Enviro Tech's

naked-licensing argument may negate the existence of a "valid, protectable

trademark."

Enviro Tech must meet the requisite, "stringent" standard of proof before a

court may find that Plaintiffs have abandoned the trademark by granting a naked

license.  Enviro Tech does not provide legal authority showing that a naked-

licensing defense may be the basis for dismissing a trademark claim on a Rule

12(b)(6) motion to dismiss.  *See Planet Drum Found.*, 2017 WL 4236932, at \*8

("As a preliminary matter, the Court notes that Defendants have not pointed to a

single case in which a trademark has been invalidated on a 'naked licensing' theory

at the pleading stage of the case."); *Godigital Media Grp., LLC v. Godigital, Inc.*,

No. CV 17-7796, 2018 WL 4943816, at \*3 n.3 (C.D. Cal. Mar. 9, 2018) ("Indeed,

every district court within the Ninth Circuit that has considered this very argument

has rejected it.").

Regardless, the factual allegations in the Complaint do not suffice as proof

that Plaintiffs, as licensors, failed to exercise adequate quality control over any

licensee.  *See Freecycle Network*, 626 F.3d at 516-17.  Plaintiffs have alleged that

they did not grant Enviro Tech any license to use the OrganiClean trademark to

sell products to consumers in Washington or nationally.  ECF No. 4 at 17-18.  This

does not demonstrate that Plaintiffs granted Enviro Tech a naked license to do so.

The Court therefore denies Enviro Tech's Motion as to Plaintiffs' Lanham

Act, trademark infringement, and Washington CPA claims.

**E. OrganiClean OC3 and Bac Stop**

Enviro Tech contends Plaintiffs have failed to state any claim as to the

OrganiClean OC3 (hereinafter "OC3") and Bac Stop products.  ECF No. 9 at 13-

14.  A complaint must contain either direct or inferential allegations respecting all

the material elements necessary to sustain recovery under some viable legal

theory. *Bell Atlantic Corp,* 550 U.S. at 562. "Factual allegations must be enough

to raise a right to relief above the speculative level." *Id.* at 555.

Here, the Complaint contains few express references to OC3 and Bac Stop

as follows:

> 26. In November 2020, the partners developed a new
> product called OrganiClean OC3. Mr. Erickson and
> Enviro Tech made cash contributions for packaging the
> new product.
> 27. The partners also began to sell another product called
> Bac Stop, which is a hand sanitizer, during the height of
> the corona virus pandemic when demand was surging.
> . . .
> 71. Plaintiffs had a possessory interest in the cash held in
> the separate bank account established specifically for the
> proceeds, after costs were deducted, from the sales of the
> partnership's products: Organiclean, OC3, and Bac Stop.

ECF No. 4 at 8 ¶¶ 26-27, 16 ¶ 71.

Plaintiffs' Complaint states "the partners" developed OrganiClean OC3 in

November 2020, and Plaintiff Erickson and Defendant Enviro Tech made cash

contributions for the packaging of the new product. ECF No. 4 at 8. Plaintiffs

state "the partners" also began to sell Bac Stop during the height of the pandemic.

*Id.* Plaintiffs mention OC3 and Bac Stop in the conversion claim, however the

conversion claim is dismissed with prejudice, as discussed *supra.* Plaintiffs do not

set forth any other facts regarding OC3 or Bac Stop. Plaintiffs state the partnership

agreement, entered in summer 2020, addressed OrganiClean. *Id.* at 5-6. Plaintiffs

ORDER - 26

contend the separate bank account was used only for OrganiClean product sales. *Id.* Plaintiffs state they agreed to share equally the net sales of OrganiClean products. *Id.* at 7. However, Plaintiffs do not clearly allege that the partnership agreement covered OC3 or Bac Stop, nor that the bank account set up for the original OrganiClean product was used for OC3 or Bac Stop. Plaintiffs use "OrganiClean product" both singularly and plural; it is thus unclear if Plaintiffs are alleging that OC3 and/or Bac Stop are OrganiClean products. For example, while Plaintiffs state they agreed to share the net sale of the OrganiClean products, *id.*, they also state, Plaintiffs, "have not received any proceeds from the sale of **the OrganiClean product**," *id.* at 10 (emphasis added). The Complaint raises only a speculative claim to relief.

Plaintiffs have not stated a plausible claim for relief with regard to OC3 or Bac Stop, as the Complaint fails to plead facts that establish a link between the alleged Agreement, the money at issue, Plaintiffs' OrganiClean trademark, and the OC3 and Bac Stop products. Plaintiffs' claims as to OC3 and Bac Stop are dismissed. Given Plaintiffs' representation that sufficient facts exist to link the products to the alleged Agreement, the Court will allow amendment as to these matters.

**F. Leave to Amend**

Enviro Tech requests dismissal with prejudice. ECF No. 9 at 14. Plaintiffs

request leave to amend if the Court grants Enviro Tech's Motion to Dismiss, citing the "liberal construction of Fed. R. Civ. P. 15(a)(2)." ECF No. 10 at 10.

Fed. R. Civ. P. 15(a)(2) provides that a court should freely grant leave to amend the pleadings when justice so requires. "Amendments to pleadings are 'applied with extreme liberality.'" *Key Tronic Corp. v. SkyBell Techs., Inc.*, No. 23-CV-237, 2023 WL 8634781, at *1 (E.D. Wash. Dec. 13, 2023) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). Courts consider five factors when deciding whether to grant leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) previous amendments, and (5) futility of the amendment. *Forman v. Davis*, 371 U.S. 178, 182 (1962); *see also United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). "[T]he court must grant all inferences in favor of allowing amendment." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

On balance, the *Davis* factors weigh against leave to amend as to the breach of the implied covenant of good faith and fair dealing and conversion claims. Although there is no indication of bad faith, Plaintiffs have amended the pleadings once, after removal and before any defendant filed a responsive pleading or motion to dismiss. Finally, the Court finds that the Court finds amendment would be futile as it does not appear that Plaintiffs will be able to cure the deficiencies in the claims. *See* ECF No. 9 at 8-9, 14. As to the Bac Stop and OC3 claims, Enviro

Tech has not demonstrated how amendment would be futile.  Thus, the factors weigh in favor of leave to amend as to the Bac Stop and OC3 claims.

## CONCLUSION

The Court dismisses Arxada, LLC from this matter.  The Court dismisses Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and for conversion with prejudice.  The Court dismisses claims as to OrganiClean OC3 and Bac Stop without prejudice, with leave to amend.

Accordingly, **IT IS ORDERED:**

1.  Defendant Arxada, LLC's Motion to Dismiss, **ECF No. 5**, is **GRANTED.**  Defendant Arxada, LLC is **DISMISSED** from this action.

2.  Defendant Enviro Tech Chemical Services, Inc.'s Motion to Dismiss, **ECF Nos. 6, 9**, is **GRANTED in part** and **DENIED in part.**

      a.  Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and conversion claim are **DISMISSED with prejudice**.

      b.  Plaintiff's claims concerning Bac Stop and OC3 are **DISMISSED without prejudice.**

3.  Plaintiffs may file an amended complaint that repleads their claims as to Bac Stop and OC3 **by no later than <u>7 days</u> from the date of this Order.**

ORDER - 29

1   **IT IS SO ORDERED.**  The Clerk's Office is directed to file this order,

2   provide copies to counsel, and **TERMINATE from this action Defendant**

3   **Arxada, LLC.**

4   **DATED** March 1, 2024.

5                                    *s/Mary K. Dimke*
                                  MARY K. DIMKE
6                       UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 30