FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 13, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANDREW ERICKSON and CRAIG BELFIELD,<br><br>                    Plaintiffs,<br><br>     v.<br><br>ENVIRO TECH CHEMICAL SERVICES, INC., a California Corporation, d/b/a OrganiClean,<br><br>                    Defendant. | No.  1:23-CV-03118-MKD<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

From January 6, 2026, to January 9, 2026, the Court held a bench trial.  ECF Nos. 146-149.  Maija Druffel and Megan Clark appeared for Plaintiffs Andrew Erickson and Craig Belfield.  Steven Rich appeared for Defendant.

The issues presented for adjudication were: Whether Plaintiffs proved the existence of a legal partnership with Defendant, such that Defendant owes Plaintiffs profits from the alleged partnership.  And, alternatively, whether Plaintiffs, in the absence of a legal partnership, are nonetheless equitably entitled to an award under an unjust enrichment theory.  The Court has considered the

ORDER - 1

evidence, heard from counsel, reviewed the record, and is fully informed.  For the reasons described below, the Court finds and concludes that while Plaintiffs have not met their burden of proving the existence of a legal partnership, they are equitably entitled to recompense from Defendant.[1]  This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52(a).

**FINDINGS OF FACT**

1. Prior to the events at issue, Plaintiffs had extensive sales and marketing experience.

2. In or around 2018, Plaintiffs began working with CH20—a chemical manufacturing company—to rebrand, repackage, and sell Defendant's Peraspray product.

3. Plaintiff Belfield conceived of the idea of obtaining organic certification for Peraspray and marketing it a multi-purpose organic cleaning solution.

4. Plaintiff Erickson coined the name "OrganiClean," to market Peraspray's potential organic certification and maximize its commercial appeal.

5. Plaintiffs testified that they had a "partnership" arrangement with CH20 with respect to selling OrganiClean: each Plaintiff and CH20 was a one-third

---

[1] Because Plaintiffs did not meet their burden of establishing a legal partnership, the Court need not discuss Defendant's contingent accounting counterclaim.

ORDER - 2

partner in the venture, and the venture would source the product from Defendant.

6. During Plaintiffs' venture with CH20, Plaintiff Erickson, using his own funds, applied for and received a trademark for "OrganiClean." The trademark was used by Defendant throughout the relevant period.

7. During their venture with CH20, Plaintiffs never set up a separate legal entity for OrganiClean.

8. Plaintiffs' venture with CH20 ended in or about October 2019.

9. After CH20 withdrew from participating in their OrganiClean venture with Plaintiffs, Plaintiffs began working directly with Defendant.

10. Plaintiffs testified that, based on discussions and an agreement with Defendant's founder and then-CEO, Michael Harvey, they formed a "partnership" with Defendant to develop, market, and sell the products OrganiClean and, eventually, BacStop.

11. Although Plaintiffs testified this alleged partnership agreement also extended to BacStop, Plaintiffs did not present evidence establishing that this alleged partnership agreement extended to BacStop. Plaintiffs did not identify any specific agreement, discussion, or meeting of the minds concerning joint ownership, profit sharing, or loss sharing with respect to BacStop.

ORDER - 3

12. At the start of this relationship, Plaintiff Erickson expended $13,209.75 of his own funds to purchase the remaining OrganiClean inventory from CH20.

13. Plaintiff Erickson testified that Defendant's then-CFO, Trinity Hammond, suggested in or about October 2019 that Plaintiffs serve as commissioned salespeople for Defendant. Plaintiff Erickson testified that he pushed back on that suggestion, opining that partnerships work best when everyone is equal, and that Mr. Harvey agreed with him.

14. No written partnership agreement was ever executed.

15. Plaintiffs testified as to an oral agreement with Mr. Harvey, that each Plaintiff and Defendant would own "one-third" of the alleged partnership.

16. Plaintiffs testified this oral agreement was reached in or about October 2019.

17. Plaintiff Erickson admitted that he has owned and operated multiple legal entities and is familiar with the process of forming formal business entities.

18. Defendant repeatedly informed Plaintiffs of the expectation that they establish a separate legal entity to carry on OrganiClean operations.

19. Despite Defendant's repeated assertions—and Plaintiff Erickson's experience with forming legal entities—Plaintiffs did not establish an LLC, corporation, or other legal entity to carry on OrganiClean operations.

20.  During the relevant period, Defendant often employed a DBA ("doing business as") title when referring to OrganiClean.

21.  Plaintiff Erickson testified that he considers a DBA as a separate entity and that he was not aware that a DBA is, in fact, a fictitious entity.  Given Plaintiff Erickson's extensive business experience with legal entities, and email communications from Ms. Hammond advising the Plaintiffs otherwise, the Court finds this line of testimony not credible.

22.  The Court finds that Defendant's use of a "doing business as" designation was an administrative or branding convenience and did not reflect the creation of a separate entity or any shared ownership interest with Plaintiffs. The use of a DBA did not alter Defendant's sole ownership and control of the business.

23.  In January 2020, Ms. Hammond emailed Plaintiffs: "The agreement during our phone conference a few months ago was that Enviro Tech will temporarily act as a DBA until you and Craig set up a separate entity which would be held 1/3 each.  Perhaps another discussion should be scheduled to re-address long-term plans?"  Exhibit 1013 at 1.

24.  In February 2020, Ms. Hammond emailed Plaintiffs: "As agreed in our conference call several months ago, the 1/3 ownership will apply to the separate OrganiClean entity that you and Craig had wanted to setup – I

believe your preference was a partnership structure, an LP, perhaps. The 1/3 split doesn't apply to a dba because a dba is not a separate entity. The dba is Enviro Tech simply using a different name on the invoice for certain sales. The dba was to be a temporary solution until a separate entity was established. Please let us know if you still intend to establish a separate entity called OrganiClean which will be owned 1/3 each as stated below. Alternately, since you previously mentioned that you lack the resources to manage day-to-day business activities, Enviro Tech can retain the dba and we can discuss an arrangement where costs and profits can be shared 1/3 each. Please let us know if you'd like to schedule a conference call to discuss this further." Exhibit 1012 at 2.

25. Plaintiff Erickson responded: "I think the arrangement beginning with 'alternately' should be the plan until such time that a separate entity is needed." *Id.* at 1-2.

26. Plaintiff Erickson testified he was not aware of any further communications finalizing or formalizing any other arrangement.

27. Plaintiffs and Defendant never opened a jointly controlled bank account.

28. Plaintiffs presented no evidence that partnership tax forms (*e.g.*, Schedule K-1s) were ever prepared or filed. Plaintiffs presented no evidence that they accounted for any asserted profits on their own taxes.

29. Plaintiffs presented no evidence they accounted (*i.e.*, maintained books and records) for the alleged partnership's profits or losses.

30. Plaintiffs presented no evidence indicating Plaintiffs were aware of how any losses from the alleged partnership would be allocated.

31. Defendant retained exclusive operational and managerial control, including manufacturing, pricing, accounting, and invoicing.

32. As to Plaintiffs' understanding, they did not bear any risk associated with manufacturing costs, regulatory compliance, insurance, product liability, inventory loss, or customer nonpayment. Defendant alone assumed these risks. Plaintiffs did not contribute capital to manufacturing operations, were not responsible for overhead expenses, and were insulated from losses arising from the business.

33. Plaintiffs presented no evidence that they had the authority to bind Defendant to contracts, make operational decisions, or participate in day-to-day management.

34. Plaintiffs' testimony and conduct reflected an understanding that their role was to generate sales opportunities and market interest, while Defendant retained control over pricing, invoicing, fulfillment, and customer relationships. Plaintiffs could not set prices or bind Defendant to sales

agreements.  This course of performance is inconsistent with an intent to operate as co-owners of a business.

35.  Plaintiffs did, however, contribute marketing and business development efforts, including outreach to potential customers.  Plaintiffs also provided input on product positioning and branding.

36.  Plaintiffs incurred expenses to support their efforts, but these were often undertaken unilaterally and without any express agreement for reimbursement.

37.  Plaintiffs testified that they never presented invoices of certain expenses to Defendant.

38.  Plaintiffs hoped that their efforts would eventually produce profits, but they admitted that this was speculative, contingent on Defendant's decisions regarding pricing, sales, and distribution.

39.  Plaintiff Belfield testified that he did not have a complete understanding of how profits would be calculated.  Rather, he trusted Mr. Harvey's assertion that they would be split according to the "a third, a third, a third" agreement.

40.  Plaintiff Erickson testified that Mr. Harvey and Aaron Harvey, a relative of Mr. Harvey and then an employee of Defendant, were responsible for calculating costs.

ORDER - 8

41.  Plaintiffs' testimony suggested they understood the products' costs were predetermined—contrary to how cost in a partnership is calculated.

42.  Plaintiff Erickson testified that Mr. Harvey was responsible for setting the price of the products.

43.  Plaintiffs did not reach a mutual understanding with Defendant regarding how "profits" would be calculated, including how costs would be allocated, what expenses would be deducted; how pricing decisions would affect any purported profit share; and how disputes over costs or pricing would be resolved.

44.  The absence of an agreement on these essential economic terms weighs against a finding that the parties formed a partnership.

45.  Plaintiffs did not represent themselves to third parties as partners.  There is no evidence that third parties reasonably perceived them as co-owners of any business.

46.  Apart from generating sales, Plaintiffs' contributions, while meaningful, were limited to services, introductions, and ideas, and did not constitute co-ownership of assets, joint management, or profit/loss sharing.

47.  During the relevant period, OrganiClean sales totaled approximately $129,000 and BacStop sales totaled approximately $388,000.  Defendant's gross profit for both products totaled approximately $372,500.

ORDER - 9

48.  Plaintiffs testified they had an arrangement with Defendant regarding the cost of the products sold.  Plaintiffs testified they believed that the cost was represented in Column V of a spreadsheet referred to as "Attachment 7." *See* Exhibit 26.  Defendant generated this spreadsheet after Plaintiffs first raised their partnership claim.

49.  Based on Defendant's employee and expert witness testimony, which the Court finds credible and persuasive, and the entirety of the record, it is apparent that this column does not include all costs associated with creating and selling these products as if the arrangement between Plaintiffs and Defendant were a true partnership.

50.  Because it is not necessary for the resolution of the threshold issue of whether Plaintiffs proved the existence of a valid partnership, the Court need not determine whether a loss occurred or, if so, the amount of a loss.

51.  If losses were incurred, Plaintiffs did not share in any losses incurred by Defendant nor expected to do so.

52.  Following Arxada's acquisition of Defendant, Plaintiffs sought payment for their portion of OrganiClean and BacStop sales.

53.  Defendant refused to pay Plaintiffs, contending that a partnership did not exist and that, in any event, there were no profits during the relevant period.

54.  Plaintiffs and Mr. Harvey offered competing testimony as to their understanding of an existence of a "partnership."

55.  Plaintiffs testified they understood the alleged partnership meant a "a third, a third, a third"—a vague description, unaccompanied by fulsome elaboration, that raised more questions than answers for the factfinder.

56.  By contrast, Mr. Harvey notably disclaimed the legal significance of his use of the word "partnership."

57.  During his deposition, Mr. Harvey testified that he "use[d] the word partnership incorrectly and loosely[.]"  Exhibit 36 at 74.

58.  Mr. Harvey testified that the arrangement with Plaintiffs "was more of a – a sales and profit sharing agreement because ultimately the partnership requires that people jointly manage and operate a business, which wasn't the case here, and that they share equally in profits and losses.  And neither one of those conditions ultimately were true in this particular case, so I use the word partnership, but I was mistaken."  *Id*.

59.  Mr. Harvey testified that "[w]hat we had, initially – which is indisputable – is that we had an agreement to share the profits of the sales that were generated by Craig and Andrew and that Enviro Tech would do the billing, they would do invoicing, they'd collect the money, and then they would take

1    their – their costs with a markup and that we three would share the –

2    remaining balance of the invoice equally, a third, third, third." *Id.* at 75.

3    60. Mr. Harvey testified that "there was no joint management of this

4    arrangement" and that Plaintiffs were "basically . . . commissioned

5    salesmen." *Id.* at 76.  Mr. Harvey testified that "[t]his was only a sales

6    commission split three different ways after all the costs were – were paid to

7    Enviro Tech." *Id.*

8    61.  The Court gives weight to these portions of Mr. Harvey's testimony.  Mr.

9    Harvey's description of his understanding of Defendant's arrangement with

10    Plaintiffs is consistent with the behavior of the parties during the relevant

11    period, as described above.

12    62.  Plaintiffs conferred discrete, non-gratuitous benefits on Defendant,

13    including: product development input incorporated into OrganiClean and

14    BacStop; market introductions and retailer contacts that advanced

15    Defendant's business; and branding and marketing suggestions used by

16    Defendant.

17    63.  During the relevant period, Plaintiff Belfield invested, on average,

18    approximately 28-30 hours per week toward the venture with Defendant.

19    64.  Plaintiff Erickson contributed substantial effort to the business relationship,

20    including participation in product development, branding, marketing

ORDER - 12

initiatives, and strategic sales efforts.  Plaintiff Erickson also purchased inventory in the amount of $13,209.75 and engaged in ongoing efforts to promote Defendant's products.

65.  Although Plaintiffs' contributions differed in form, the Court finds that both Plaintiffs conferred substantial and valuable benefits on Defendant.

66.  Plaintiffs incurred expenses in connection with these efforts.  A portion of these expenses directly benefited Defendant, while other expenses were unilateral or speculative.

67.  Defendant knew of Plaintiffs' contributions and retained the benefits in a manner that advanced its business.

68.  The Court finds that a substantial portion of the sales of OrganiClean and BacStop during the relevant period resulted from Plaintiffs' direct sales efforts, customer outreach, and market introductions.  Defendant benefited from these efforts by realizing sales revenue and establishing market presence without compensating Plaintiffs for those contributions.

69.  Plaintiffs did not receive any reimbursement for their expenses, any portion of product revenue from Defendant, or any compensation for their labor and services provided to Defendant.

70.  Plaintiffs' unjust enrichment claim is not limited to reimbursement of out-of-pocket expenses. In addition to expenses incurred, Plaintiffs conferred

ORDER - 13

intangible benefits on Defendant, including market access, customer relationships, product positioning, and sales momentum, all of which Defendant retained and benefited from.

## CONCLUSIONS OF LAW

*1. Existence of a Partnership*

71. Under Washington law, a partnership is formed by "the association of two or more persons to carry on as co-owners a business for profit." RCW § 25.05.055(1).

72. Stated another way, a partnership is "[a] contract of two or more competent persons, to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss, in certain proportions." *Nicholson v. Kilbury*, 145 P. 189, 191 (Wash. 1915) (citation omitted).

73. "The burden of proving a partnership is on the party asserting its existence. Just because the parties call their arrangement a partnership does not make it a partnership. Essential to the creation of a partnership is an express or implied partnership contract. Whether a partnership contract exists depends on the parties' intentions, manifested by all facts and circumstances, including the parties' actions and conduct. While a partnership's existence can be established by circumstantial evidence, circumstantial evidence does

not tend to prove the existence of a partnership unless it is inconsistent with any other theory.  Another important test in determining whether a partnership is formed is sharing losses." *DeFelice v. State, Emp't Sec. Dep't*, 351 P.3d 197, 201 (Wash. 2015) (simplified).

74. "A contract of partnership, either express or implied, is essential to the creation of the partnership relationship.  Such a contract must contemplate a common venture uniting labor, skill, or property of the parties, for the purpose of engaging in lawful commerce or business for the benefit of all of them; a sharing of profits and losses; and joint right of control of its affairs.  Whether a partnership contract has come into existence depends, as in the case of other contracts, on the intention of the parties, this intention to be manifested by the conduct, statements, and writings of the parties." *Eder v. Reddick*, 278 P.2d 361, 365-66 (Wash. 1955) (simplified).

75. "The essential test of the existence of a partnership is whether the parties intended to establish such a relation as manifested by their express agreement or inferred from their acts and statements." *Cusick v. Phillippi*, 709 P.2d 1226, 1231 (Wash. Ct. App. 1985) (simplified).

76. "The mere sharing of the net proceeds of a business venture with an employee, without more, does not of itself convert the relationship between the parties concerned into a partnership.  There must be a community of

ORDER - 15

interest in, or a joint ownership of, the business itself, accompanied by a joint right of control of its affairs." *Bengston v. Shain*, 255 P.2d 892, 895 (Wash. 1953) (citation omitted).

77. In the absence of a written agreement, the Court must look to the intention of the parties. The Court concludes that Defendant—through its agent, Mr. Harvey—never intended on forming a legal partnership, and that Plaintiffs actions were inconsistent with their stated intention.

78. Based on Mr. Harvey's credited testimony, Mr. Harvey intended to enter into "sales and profit sharing agreement" with Plaintiffs. That Mr. Harvey used the term "partnership" with Plaintiffs carries little to no legal significance. *See DeFelice*, 351 P.3d at 201 ("Just because the parties call their arrangement a partnership does not make it a partnership.").

79. And contrary to their testimony concerning their intentions—or their understanding of what "partnership" meant to them—Plaintiffs' actions during the relevant period do not reflect an intention to share in Defendant's profits and losses and exercise a right to jointly control the venture's affairs. *See Eder*, 278 P.2d at 365-66.

80. Plaintiffs presented no evidence that Plaintiffs formed a separate legal entity; that Plaintiffs opened or otherwise utilized a jointly controlled bank account; that Plaintiffs filed partnership tax forms; that Plaintiffs exercised

ORDER - 16

any operational or managerial control; that Plaintiffs even had the right to jointly control the venture's affairs; that Plaintiffs had the authority to bind Defendant to contracts; or that Plaintiffs participated in day-to-day management.

81.  Of note, Plaintiff Erickson explicitly disclaimed an intent to manage the day-to-day affairs of the venture.  *See* Exhibit 1012 at 1-2; *see also In re the Estate of Thornton*, 541 P.2d 1243 (Wash. Ct. App. 1975) (no implied partnership where the evidence was, unlike here, "as consistent with a finding that the appellant was a managerial employee authorized to incur financial obligations" on behalf of the partnership as it was that the appellant was a partner).

82.  The Court thus concludes that there was no meeting of the minds between Plaintiffs and Defendant and, accordingly, no "*contract* of two or more competent persons, to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss, in certain proportions." *Nicholson*, 145 P. at 191 (citation omitted; emphasis added).

83.  Plaintiffs failed to meet their burden of proving a partnership.

### 2. Unjust Enrichment

84. "Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008).

85. "Three elements must be established in order to sustain a claim based on unjust enrichment: a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Id*. (quoting *Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18 (Wash. Ct. App. 1991), *amended sub nom. Bailie Commc'ns, Ltd v. Trend Bus. Sys., Inc.*, 814 P.2d 699 (Wash. Ct. App. 1991)).

86. "A party claiming unjust enrichment must show three things: (1) conferral of the benefit, (2) knowing acceptance or retention of the benefit, and (3) lack of adequate compensation for the benefit." *Bircumshaw v. Washington*, 380 P.3d 524, 539 (Wash Ct. App. 2016) (citation omitted).

87. Plaintiffs have sufficiently proven all three elements of their unjust enrichment claims.

ORDER - 18

88.  First, Plaintiffs have proven by a preponderance of the evidence that each Plaintiff conferred a benefit on Defendant—including a significant amount of financial investment; skill, time and labor; and sales and marketing efforts that led to the advancement of Defendant's business, as described above.

89.  Second, Plaintiffs have proven by a preponderance of the evidence that Defendant knowingly accept and retained the benefits Plaintiffs conferred on it.

90.  Third, Plaintiffs have proven by a preponderance of the evidence that Defendant failed to adequately compensate Plaintiffs for the benefits conferred on it.  It is undisputed that Defendants did not reimburse Plaintiffs for any of their expenses; did not share in any product revenue from sales generated by Plaintiffs; and did not other compensate Plaintiffs for their skill, time, and labor provided to Defendant.

91.  On this record, the Court concludes Defendant has been unjustly enriched by Plaintiffs' actions.

92.  Washington law affords the Court "tremendous discretion to fashion a remedy to do substantial justice to the parties and put an end to the litigation."  *Young*, 191 P.3d at 1264 (simplified); *see also Kingston v. Int'l Bus. Machines Corp.*, 454 F. Supp. 3d 1054, 1062 (W.D. Wash. 2020)("Unjust enrichment is an equitable remedy.  The concept of equitable

jurisdiction exists to permit the court to do justice when the letter of the law either does not cover the situation or may tend to dictate an inequitable result."); *Mastaba, Inc. v. Lamb Weston Sales, Inc.*, 23 F.Supp.3d 1283, 1295 (E.D. Wash. 2014) ("Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it.").

93. Exercising its discretion, the Court concludes that an award of **$100,000** to each Plaintiff is equitably necessary to do substantial justice.

94. In fashioning this award, the Court has considered the entirety of the trial record, to include Plaintiffs' individual and collective investments and efforts, Defendant's knowing acceptance and retention of the benefits conferred upon it, and Defendant's failure to remunerate Plaintiffs.

95. The Court finds that an award of $100,000 to each Plaintiff represents a conservative and reasonable approximation of the value of the benefits conferred on Defendant.

96. This amount is substantially less than the value of sales generated and the commercial benefit retained by Defendant and does not constitute a share of profits or an ownership interest in the business.

# CONCLUSION

For the reasons described above, the Court **FINDS AND CONCLUDES** that Plaintiffs have failed to meet their burden of proving the existence of a legal partnership but are nonetheless equitably entitled to an award of **$100,000** each, for the unremunerated benefits each Plaintiff conferred upon Defendant.  As the prevailing parties, Plaintiffs may brief whether they are entitled to attorneys' fees.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, **enter judgment**, provide copies to the parties, and **CLOSE THE FILE**.

DATED February 13, 2026.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 21